UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:15-CV-129-TBR

JONATHAN E. HANDMAKER, *et al.*                                               PLAINTIFFS

v.

CERTUSBANK, N.A.                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' partial motion to dismiss. (Docket #25). Defendant has responded and filed a supplemental response. (Docket #43, 72). Plaintiffs have replied and filed a supplemental reply. (Docket #48, 77). Defendants have filed a sur-reply. (Docket #80). Defendants have also filed a motion for leave to file a first amended answer and counterclaim. (Docket #49). These issues are now ripe. For the following reasons, Plaintiffs' partial motion to dismiss (Docket #25) is GRANTED in part and DENIED in part and Defendant's motion for leave to file a first amended answer and counterclaim (Docket #49) is GRANTED.

BACKGROUND

In 2000, Plaintiff Jonathan Handmaker and Plaintiff George Vredeveld, Jr. formed Quadrant Financial, Inc. ("Quadrant I"). Quadrant I specialized in "small business loans for commercial ventures through the U.S. Small Business Administration." (Docket #25). In 2004, First Chatham Bank began negotiating with Handmaker and Vredeveld about purchasing an interest in Quadrant I. The parties ultimately agreed upon a deal in which Quadrant I would be merged into the newly formed Quadrant Financial, Inc. ("Quadrant II"). Handmaker and

1

Vredeveld collectively owned 49% of Quadrant II while the remaining 51% was owned by First Chatham Bank and certain preferred shareholders.

Over the next eight years, Quadrant II continued to specialize in commercial loans. In 2012, Defendant CertusBank, N.A. ("Certus") began negotiating with Handmaker, Vredeveld, and First Chatham Bank about purchasing all of Quadrant II. On October 31, 2012, the parties executed a Stock Purchase Agreement that would transfer all stock and assets of Quadrant II to Certus. (Docket #20). One of Quadrant II's assets was $5.5 million held in escrow (the "Escrow Account"). The Escrow Account was allegedly "required by the Small Business Administration in 2011 as part of its Consent Order with First Chatham Bank." (Docket #49).

As part of the sale, Certus hired Handmaker and Vredeveld as Executive Vice Presidents, Co-Head of Government Guaranteed Lending. Handmaker and Vredeveld also signed a Retention Agreement that held back in a separate escrow account $1 million due Handmaker and Vredeveld from the sale of Quadrant II. This $1 million was to be released to Handmaker and Vredeveld if they completed two years of employment with Certus.

The parties have now filed multiple claims against one another. Certus claims it has not received control over the $5.5 million Escrow Account. Certus alleges that Handmaker and Vredeveld described the Escrow Account as an asset which could be transferred and that Handmaker is the authorized individual in control of the Escrow Account. (Docket #49). Handmaker and Vredeveld claim that Certus wrongfully terminated them to avoid paying them the $1 million due under the Retention Agreement. Handmaker and Vredeveld's employment began on February 1, 2013 and their two-year term expired on January 31, 2015. Certus

2

allegedly wrongfully terminated Handmaker and Vredeveld on January 21, 2015 – ten days before the $1 million payment under the Retention Agreement would become due.

The Court granted in part and denied in part Certus's motion to dismiss Handmaker and Vredeveld's claims. (Docket #64). Currently before the Court is Handmaker and Vredeveld's motion to dismiss Certus's claims.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

Plaintiffs Handmaker and Vredeveld move to dismiss Certus's claims for breach of contract, unjust enrichment, conversion, and fraudulent inducement. Certus's claim for declaratory judgment is not at issue. Certus has filed a motion for leave to file an amended

answer and counterclaims. (Docket #49). The parties have submitted additional briefing on this issue and the Court will consider their arguments in light of the amended counterclaims.[1]

### I. Breach of Contract.

"[A] cause of action for breach of contract must state 'the contract, the breach and the facts which show the loss or damage by reason of the breach.'" *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 724 (W.D. Ky. 2013), *reconsideration denied* (Aug. 20, 2013) (citation omitted).

Certus alleges that Handmaker and Vredeveld breached the Stock Purchase Agreement by failing to transfer the $5.5 million Escrow Account and by representing that the Escrow Account was an asset which would be transferred to Certus. Handmaker and Vredeveld argue this claim must be dismissed because neither Handmaker nor Vredeveld made a representation or warranty in the Stock Purchase Agreement that the Escrow Account was an asset that would be transferred. The Court finds that even if Handmaker and Vredeveld's argument is accurate it does not warrant dismissal of Certus's breach of contract claim because other contractual provisions support that claim.

Handmaker and Vredeveld argue that only Quadrant II represented that the Escrow Account was an asset that would be transferred to Certus and therefore only Quadrant II can be held liable. The basis of this argument is found in Section 3 of the Stock Purchase Agreement which states the representations made by each party. Section 3.1 contains the representations and warranties made by Sellers, including Handmaker and Vredeveld. Section 3.2 contains representations made by the Company, Quadrant II. Handmaker and Vredeveld argue that the

---

[1] The Court rejects Certus's argument that Plaintiffs' motion to dismiss is mooted by Certus's motion to amend its answer and counterclaims. First, the counterclaims asserted by Certus in its amended answer echo the counterclaims originally asserted by Certus. Second, the Court has permitted the parties additional time to brief this issue and the parties have done so.

only representation made about ownership of assets is found in Section 3.2(j). They argue that since only Quadrant II made these warranties, only Quadrant II can be liable if assets of Quadrant II were not transferred to Certus. (Docket #25).

In response, Certus argues that its breach of contract claim stems from other provisions in the Stock Purchase Agreement. For instance, Section 4.6 requires Handmaker and Vredeveld to notify Certus if, "at any time prior to the Closing Date, such Seller becomes aware of any event, fact or condition that would cause the representations and warrants of such Seller and the Company in this Agreement to be untrue or incomplete. . . ." (Docket #20). In other words, Certus argues Section 4.6 obligated Handmaker and Vredeveld to notify Certus if they were aware that any representation made by Quadrant II, such as the representation that the Escrow Account could be transferred, were actually untrue. Handmaker and Vredeveld's alleged awareness of this fact and failure to notify Certus is sufficient support for Certus's breach of contract claim. (Docket #49).

Certus also alleges that Handmaker and Vredeveld were obligated by the "Further Assurance" clause to transfer ownership of the Escrow Account. That clause, found in Section 5.6, states: "Each party shall . . . perform such further acts, as may be necessary or appropriate to . . . comply with and give full effect to the terms of this Agreement and consummate the transactions contemplated hereby." (Docket #20). Handmaker and Vredeveld allegedly breached this clause when Handmaker, the authorized representative for the Escrow Account, failed to transfer control over the Escrow Account to Certus.

Construing the claims in favor of Certus, which the Court must do at this stage, the Court holds that Certus has stated a valid claim that Handmaker and Vredeveld breached the Stock

5

Purchase Agreement by failing to notify Certus that the Escrow Account would not be transferred and by failing to effectuate that transfer.[2]

## II. Unjust Enrichment.

There are three elements to a claim of unjust enrichment: (1) "a benefit must be conferred upon the defendant at the plaintiff's expense" (2) "the benefit must result in an appreciation by the defendant" and (3) "the acceptance of the benefit under circumstances which render its retention, by the defendant without payment of the value thereof, inequitable." *Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987).

Certus alleges that Handmaker and Vredeveld have "been unjustly enriched in the amount of $5.5 million" because they have not transferred the Escrow Account. (Docket #49). Handmaker and Vredeveld argue Certus's unjust enrichment claim is duplicative of its breach of contract claims and should therefore be dismissed. Courts routinely dismiss claims for unjust enrichment when they are grounded on a breach of contract claim. *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F. Supp. 2d 714, 719 (W.D. Ky. 2001); *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009) ("Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another") (emphasis in original). Certus points to two cases case in which an unjust enrichment claim and a breach of contract claim were allowed to proceed concurrently. (Docket #72). Those cases are distinguishable because the existence of a contract was still in dispute. *Compare Holley Performance Products, Inc. v. Keystone Auto. Operations, Inc.*, 2009

---

[2] Plaintiffs argue that Handmaker could not have transferred the Escrow Account because the Small Business Administration would not release the funds to Certus. Whether or not this is true, it is a factual issue and therefore does not support a motion to dismiss.

WL 3613735, at *5 (W.D. Ky. Oct. 29, 2009); *and Medplast Elkhorn, Inc. v. Cytocore, Inc.*, 2009 WL 2503710, at *1 (E.D. Wis. Aug. 17, 2009) ("As the court has not yet reached the issue of contract existence, plaintiff is not required to jettison any possible theories of recovery") *with Mitchell v. GM LLC*, 2014 U.S. Dist. LEXIS 43943 (W.D. Ky. 2014) ("Because the parties do not dispute the existence of this contract, Plaintiff is not permitted to plead claim breach of express warranty claims and unjust enrichment in the alternative"). The parties do not dispute the existence of a valid contract in this case. Accordingly, Certus's unjust enrichment claim shall be dismissed.

### III. Conversion.

"Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property."[3] *Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 614 (6th Cir. 2013) (citation omitted).

Handmaker and Vredeveld state two reasons why Certus's conversion claim must be dismissed. First, they argue that dismissal of Certus's breach of contract claim necessitates dismissal of this claim. (Docket #25). However, as this Court has found Certus stated a valid claim for breach of contract, this argument fails.

Handmaker and Vredeveld also argue that "Certus has failed to adequately allege the manner in which Plaintiffs 'exercised ownership, control, and dominion' over the Escrow Account." (Docket #77). In its counterclaim Certus alleges:

> In failing to either transfer $5.5 million in cash as promised or to return $5.5 million of the purchase price Defendant paid for Quadrant Financial, Mr. Handmaker and Mr. Vredeveld have intentionally and wrongfully exercised ownership, control and dominion over this $5.5 million in funds since October 31,

---

[3] Our sister court has noted that "Kentucky law is unsettled as to the necessary elements of a conversion claim." *Caudill Seed & Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, 2013 WL 4048541, at *7 (W.D. Ky. Aug. 9, 2013). The parties have not addressed the proper pleading standard in their briefing. The Court will address whether any argument raised by Handmaker and Vredeveld supports dismissal of Certus's conversion claim.

2012. Mr. Handmaker and Mr. Vredeveld had no right to retain this $5.5 million in funds. (Docket #49).

Certus also alleges that Handmaker "was the individual authorized to initiate and approve transactions of all types for the Escrow Account." (Docket #49). Taken together, the Court finds that Certus has adequately alleged that Handmaker and Vredeveld exercised control over the Escrow Account.

### IV. Fraud.

A party alleging fraud must prove six elements by clear and convincing evidence: "(1) a material misrepresentation; (2) which is false; (3) which is known to be false or is made recklessly; (4) made with the intent that it be acted upon; (5) actual reliance thereon; and (6) which causes injury." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007)

Certus has asserted both a claim of "intentional, fraudulent and/or negligent misrepresentation" and a claim of breach of contract accompanied by fraudulent inducement. (Docket #49). Handmaker and Vredeveld argue these claims must be dismissed because of the economic loss doctrine.[4]

"The economic loss rule bars recovery in tort for economic loss." *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). "The economic loss doctrine precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim." *Westlake Vinyls*, 518 F. Supp. 2d at 968.

Certus has not addressed the argument that its two claims sounding in fraud are barred by the economic loss doctrine. (Docket #43, 72, 80). The Court finds that Certus has stated a valid

---

[4] Plaintiffs also allege that Certus has failed to identify a false statement. (Docket #25). The Court finds the allegation that Plaintiffs misrepresented that Certus could access and withdraw $5.5 million from the Escrow Account is sufficient to satisfy this element.

8

claim for breach of contract and that Certus's fraud claims arise out of the same facts as that breach of contract claim. Accordingly, Certus's claims for fraud and breach of contract by fraudulent inducement will be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for leave to file a first amended answer and counterclaim (Docket #49) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' partial motion to dismiss (Docket #25) is GRANTED in part and DENIED in part. Certus's claims for unjust enrichment; intentional, fraudulent and/or negligent misrepresentation; and breach of contract accompanied by fraudulent inducement are DISMISSED.

cc: counsel of record